OPINION
{¶ 1} Defendant-appellant, Ronald A. Spence, Jr., appeals his convictions in the Butler County Court of Common Pleas for murder and gross abuse of a corpse. We affirm appellant's convictions.
 {¶ 2} On April 9, 2001, Monroe City Police Officers Mike Rosenbalm and Tom Cobaugh drove to appellant's residence in Monroe, after the police dispatcher issued a report of a possible accidental homicide at that location. When Officer Rosenbalm arrived, he approached appellant's father, who had made the initial call to the police. Appellant's father told Officer Rosenbalm that his son had advised him that he had accidentally killed his wife. Appellant's father then directed Officer Rosenbalm to appellant's trailer, and told him that his son was inside.
 {¶ 3} Officer Rosenbalm knocked on appellant's door, identified himself, and asked appellant to come out onto the porch of the trailer. Appellant exited his home upon Officer Rosenbalm's request, and stood on his front porch. Officer Rosenbalm asked appellant what the problem was, and appellant responded that he had accidentally killed his wife. When asked for clarification, appellant stated that a few days earlier, when he was drunk, he had beaten and killed his wife.
 {¶ 4} Officer Rosenbalm then requested that appellant come down from the porch. After appellant did so, Officer Rosenbalm handcuffed him and transported him to Officer Cobaugh's police cruiser. Officer Cobaugh then entered appellant's home to search for the victim. As Officer Rosenbalm was walking appellant to the cruiser, he asked appellant where his wife was located, and appellant responded that her body was located in the bedroom closet. Officer Rosenbalm then placed appellant inside the cruiser and entered appellant's trailer. Although appellant had been secured in handcuffs and locked inside the police cruiser, he was not placed under arrest nor did either officer read appellant Miranda warnings at this time.
 {¶ 5} Once both officers were inside appellant's home, they found a body in a bedroom closet, which had been wrapped in thick, clear plastic. They also found a smaller black plastic bag in the closet. The body was later determined to be that of Shawny Spence, appellant's wife, and the black bag contained her amputated left arm and a hacksaw. After the officers located the body, appellant was placed under arrest.
 {¶ 6} After discovering the body, the officers exited the home, and Middletown Police Detective Dave Shortt entered the trailer. Detective Shortt took photographs of appellant's home, and sketched several diagrams of the crime scene. After learning that a small child could have been inside the home, Detective Shortt conducted a search. Detective Shortt looked under appellant's bed and observed a roll of thick plastic, similar to the plastic that had been wrapped around the victim's body. He then looked inside the black bag that was located next to the body, and discovered that it contained fluids, amputations, hair, and a hacksaw. As a result of his search, Detective Shortt seized several items of physical evidence, including the contents of the black bag, pillows and a comforter from appellant's bed, appellant's mattress, and several paper plates with writing on them.
 {¶ 7} On April 12, 2001, a judge issued a search warrant to Officers Rosenbalm and Cobaugh, which authorized them to search for several items, including a broken portion of the victim's front tooth. Officer Rosenbalm did not recover the portion of the tooth, but while he was looking for it, he discovered and seized a folded paper plate with a handwritten note inside it. On April 24, 2001, the officers obtained a second search warrant, authorizing them to search for knives and other sharp objects, and also the drain from appellant's bathtub. As a result, the officers seized several knives, a meat cleaver, and the drain.
 {¶ 8} The state charged appellant with murder, in violation of R.C. 2903.02(A) and gross abuse of a corpse, in violation of R.C.2927.01(B). On June 4, 2001, appellant moved to suppress all evidence obtained from searches and seizures of appellant and his residence, and all statements made by or elicited from appellant. On June 9 and 10, 2001, the trial court held a suppression hearing, and the trial court overruled appellant's motion to suppress on October 16, 2001.
 {¶ 9} Appellant was tried before a jury in March 2002, and was found guilty of murder and gross abuse of a corpse. The trial court imposed a sentence of 15 years to life imprisonment for the murder conviction, and 11 months imprisonment for the gross abuse of a corpse conviction, the sentences to be served consecutively. Appellant now appeals the trial court's decision overruling his motion to suppress, stating in his sole assignment of error that the trial court erred in failing to suppress appellant's interrogation statement.
 {¶ 10} An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. When considering a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. However, an appellate court determines, without deference to the trial court, whether the court has applied the appropriate legal standard. State v. Anderson (1995), 100 Ohio App.3d 688,691.
 {¶ 11} First, appellant claims that the trial court erred in overruling his motion to suppress because he was subjected to custodial interrogation without being read his Miranda warnings. It is well-settled that, before a person may be subjected to a custodial interrogation, he must be advised his rights under Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602. Custodial interrogation consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. However, Miranda warnings are only required for custodial interrogation, and are not required when police conduct on-scene investigative questioning. State v. Van Fossen (1984), 19 Ohio App.3d 281, 284.
 {¶ 12} A person is "in custody" for purposes of Miranda when he is placed under formal arrest or his freedom of action is restrained in a manner consistent with a formal arrest. Minnesota v. Murphy (1984),465 U.S. 420, 430, 104 S.Ct. 1136. In determining whether a person is in custody, the relevant inquiry is, given the totality of the circumstances, whether a reasonable person in the individual's position would have believed that he was not free to leave. Berkemer v. McCarty
(1984), 468 U.S. 420, 442, 104 S.Ct. 3138; State v. Gumm,73 Ohio St.3d 413, 429, 1995-Ohio-24. "Interrogation" refers not only to express questioning, but also to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis (1980), 446 U.S. 291,301, 100 S.Ct. 1682.
 {¶ 13} Appellant argues that he was subjected to custodial interrogation at the moment Officer Rosenbalm asked him to come out of his trailer. When a suspect has not been formally placed under arrest, the restraint on the suspect's freedom of movement must be significant in order for the suspect to be in custody. State v. Fille, Clermont App. No. CA2001-08-066, 2002-Ohio-3879. If an officer restrains a suspect's freedom, that person is in custody if he could not have attempted to leave. State v. Maurer (1984), 15 Ohio St.3d 239. For purposes ofMiranda, the initial determination of whether a suspect is in custody depends on the objective circumstances of the interrogation, rather than the subjective views of either the interrogating officer or the suspect.Stansbury v. California (1994), 511 U.S. 318, 323-234, 114 S.Ct. 1562.
 {¶ 14} Reviewing the totality of the circumstances surrounding the encounter between appellant and Officer Rosenbalm, the trial court did not err in determining that appellant was not subjected to a custodial interrogation. According to Officer Rosenbalm's testimony, he asked appellant to come out of his house and onto his porch to avoid having to enter appellant's home. By doing this, Officer Rosenbalm did not restrict appellant's freedom in any significant way. Although the record indicates that Officer Rosenbalm had his hand on his weapon, he testified that the weapon remained in his holster.
 {¶ 15} In response to the 9-1-1 call, and in furtherance of his investigation, Officer Rosenbalm then asked appellant what the problem was. Appellant was under no obligation to answer Officer Rosenbalm's question, and at that point appellant's freedom was still not restricted in any manner. However, appellant voluntarily answered that he had killed his wife. At the time appellant made this statement, he was not in custody, because his freedom was not significantly restricted.
 {¶ 16} After appellant stated that he had killed his wife, Officer Rosenbalm placed appellant in handcuffs for his own safety. A police officer may use handcuffs in the course of an investigatory detention, as long as such use of the handcuffs is reasonable under the circumstances.State v. Pickett (Aug. 3, 2000), Cuyahoga App. No. 76295. Officer Rosenbalm was justified in placing appellant in handcuffs for his safety after hearing appellant admit he had killed his wife. However, by doing so, Officer Rosenbalm did create an "in custody situation," because appellant was not free to leave after being handcuffed.
 {¶ 17} While appellant's freedom was restricted once he was handcuffed and placed inside the locked police cruiser, he had already made the incriminating statement that he had killed his wife. After being handcuffed, the only new information appellant offered to the officers was the location of the victim's body. Even though appellant was in custody after being handcuffed, police officers, under certain circumstances, may temporarily forgo advising a suspect of his Miranda
rights in order to ask questions necessary to securing the safety of the public. New York v. Quarles (1984), 467 U.S. 649, 104 S.Ct. 2626. Some courts have extended this public safety exception to situations where there is an overriding need to save human life or to rescue persons whose lives are in danger. See State v. Santiago, Lorain App. No. 01CA007798,2002-Ohio-1114; State v. Turner (June 16, 2000), Hamilton App. No. C-990388; State v. Taylor (Dec. 16, 1992), Lorain App. No. 92CA005313.
 {¶ 18} Under the facts of this case, Officer Rosenbalm did not know if the victim was still alive, and appellant was the only person who knew where she was located. Officer Rosenbalm's question was prompted by a concern for the victim's safety and fits within the narrow public safety exception to the Miranda rule. Thus, we hold that under these circumstances, Officer Rosenbalm was not required to advise appellant of his Miranda rights before asking appellant where his wife was located.
 {¶ 19} Next, appellant argues that the trial court erred in overruling his motion to suppress because the officers made an illegal warrantless entry and search of appellant's trailer. The state argues appellant failed to preserve error in the admission of evidence for appeal. However, based on our review of the record, appellant properly preserved the issue for appellate review by objecting to the admission of physical evidence during the trial. Counsel for appellant objected on the record to the admission of physical evidence collected from appellant's home, and requested that the court note his continuing objection to all such evidence. The trial court overruled his motion, and noted his continuing objection for the record. We find that such an objection is sufficient to preserve this issue for appellate review.
 {¶ 20} The Fourth Amendment to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution provide that an individual has the right to be free from an unreasonable search and seizure without a search warrant that is particular and supported by probable cause. Where a person has a reasonable expectation of privacy, a warrantless search or seizure is presumptively unreasonable unless it falls within a recognized exception to the warrant requirement. Paytonv. New York (1980), 445 U.S. 573, 586-587, 100 S.Ct. 1371; State v.Moore, 90 Ohio St.3d 47, 49, 2000-Ohio-10.
 {¶ 21} One well-recognized exception to the warrant requirement is where exigent circumstances or an emergency exists. A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507. The need to protect or preserve life or avoid serious injury is justification for what would otherwise be an illegal entry absent an exigent circumstance or emergency. Mincey v. Arizona (1978), 437 U.S. 385,392-393, 98 S.Ct. 2408. Police officers are not required to delay in the course of an investigation if to do so would endanger the lives of others. Warden, Maryland Penitentiary v. Hayden (1967), 387 U.S. 294,298-299, 87 S.Ct. 1642. Thus, the exigent circumstances exception to the warrant requirement applies when police have a reasonable basis to believe that a person inside the premises is in need of immediate aid.Parma v. Jackson (1989), 58 Ohio App.3d 17, 18.
 {¶ 22} In the case at bar, neither party disputes that Officers Rosenbalm and Cobaugh were justified in entering appellant's trailer to discern whether the victim needed assistance after appellant told him that he had killed his wife. The officers responded to a 9-1-1 call to investigate a possible murder, and upon hearing appellant state that he had killed his wife, they certainly had a reasonable basis to enter appellant's home. However, appellant argues that the permissible warrantless entry into appellant's trailer ended once Officers Rosenbalm and Cobaugh located the victim's body and determined that she was not alive. Appellant further claims that any search of appellant's home after this time was impermissible and that any evidence seized as a result of the search should be suppressed. Specifically, appellant maintains that the trial court should have suppressed photographs and diagrams of the crime scene, and all physical evidence seized on April 9, 2001.
 {¶ 23} While officers are permitted to make a warrantless search when they have a reasonable basis to believe that a victim is in need of aid, such a search must be "strictly circumscribed by the exigencies which justify its initiation." Terry v. Ohio (1968), 392 U.S. 1, 25-26,88 S.Ct. 1868. An officer may seize any evidence that is in plain view during the course of their legitimate emergency activities. Michigan v.Tyler (1978), 436 U.S. 499, 509-510, 98 S.Ct. 1942.
 {¶ 24} The initial requirement for such a seizure is that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California
(1990), 496 U.S. 128, 136, 110 S.Ct. 2301. In addition, the officer must be lawfully located in a place from which the object can be plainly seen, and must also have a lawful right of access to the object itself. Id. at 137. Finally, the incriminating character of the evidence in plain view must be "immediately apparent." Id. at 136.
 {¶ 25} As we previously stated, Officers Rosenbalm and Cobaugh were justified in entering appellant's home to determine if the victim was in need of assistance. There is no indication in the record that the officers intended to conduct a warrantless search by using the "emergency" exception to the warrant requirement as a pretext. Rather, the record reflects that the officers entered appellant's home solely out of concern for the safety of the victim. The search of appellant's home was limited only to what was necessary to effectuate the purpose of the entry, which was to locate the victim to determine if she needed medical attention.
 {¶ 26} According to the record, during their initial search for the victim, Officers Rosenbalm and Cobaugh visually inspected appellant's living room, hallways, bathroom, two bedrooms, and a bedroom closet. The officers noticed pill containers and pills, along with several paper plates located on a table in the living room. In the bedroom, the officers saw pillows and a comforter on a bed. Also, the officers located the body of the victim, along with a small black bag in appellant's bedroom closet.
 {¶ 27} As a result of this initial search, the officers were permitted to seize any evidence that was immediately incriminating in nature, because they were lawfully permitted to be inside appellant's home. The record indicates that at this point, the only item of physical evidence that was immediately incriminating was the body of the victim that was wrapped in clear plastic.
 {¶ 28} We disagree with appellant's claim that all evidence collected after the officers located the body should have been suppressed. Appellant is correct that once the officers located the victim's body and discerned that she was not alive, the emergency situation that necessitated the entry into appellant's home terminated. However, police officers may reenter a residence and collect evidence in plain view, even when the emergency situation that justified the initial intrusion has terminated. State v. Sage (1987), 31 Ohio St.3d 173,185-186. The condition is that during the reentry, the officers are limited to the scope of their initial entry. Id.
 {¶ 29} According to the record, the officers were not able to see the bloodstains on the pillows and comforter in appellant's bedroom because the lighting in the room was inadequate. When the officers reentered the bedroom and pulled the blinds on the bedroom windows, they were able to see that the pillows and comforter had bloodstains on them. By increasing the amount of light in the bedroom, the officers did not enlarge the scope of their search beyond that of the original emergency search. Because the comforter and pillow had bloodstains on them, those items of evidence were immediately incriminating, and the officers were justified in seizing them.
 {¶ 30} We also disagree with appellant that the crime scene photographs and crime scene diagrams should have been suppressed. The record indicates that Detective Shortt, accompanied by Officers Rosenbalm and Cobaugh, entered appellant's home after the victim's body had been located. Detective Shortt then took photographs of the inside of appellant's home, and he also took measurements and sketched diagrams of the crime scene. When Detective Shortt made the second warrantless entry into appellant's trailer, he simply conducted an activity that Officers Rosenbalm and Cobaugh could have performed during the initial entry. SeeState v. Byerly (Aug. 21, 1998), Portage Co. App. No. 97-P-0034. According to the record, Detective Shortt did not physically disturb anything in appellant's home while taking photographs. Rather, he limited his search to the areas Officers Rosenbalm and Cobaugh had already visually inspected. Although Detective Shortt did take photographs of appellant's mattress, he only did so after the bloodstained pillows and comforter had been seized. Thus, the trial court properly admitted the photographs and crime scene diagrams as evidence.
 {¶ 31} In addition, the trial court correctly admitted as evidence the contents of the black plastic bag that was found with the victim's body, along with a roll of clear plastic. According to the record, after taking photographs and sketching diagrams of the crime scene, Detective Shortt learned that appellant and the victim had a child who had not been located. During his search for the child, Detective Shortt looked under appellant's bed and saw a roll of clear plastic, which was similar to the plastic that was wrapped around the victim's body. Also, Detective Shortt prodded the outside of the black plastic bag to discern its contents, and felt what he believed to be human flesh. Officer Shortt testified that he opened the bag because he thought that it might have contained a human body. When Detective Shortt opened the bag, he discovered what later was found to be the victim's severed arm and the hacksaw that apparently was used for the amputation.
 {¶ 32} As we previously stated, Detective Shortt's warrantless entry into appellant's home was justified as a continuation of Officers Rosenbalm and Cobaugh's initial entry. However, Detective Shortt's search of appellant's home was limited to the scope of the prior entry. SeeSage, 31 Ohio St.3d 173, 185-186. Until Detective Shortt learned of the possibility that a child could have been in the trailer, he would have been unable to search under appellant's bed or reach into the black bag to discern its contents. Once Detective Shortt had knowledge that appellant's child had not yet been located, he was justified in conducting a warrantless search of the home to determine if the child was in danger or needed medical assistance. See Mincey, 437 U.S. 385, 392-393. Thus, Detective Shortt properly seized the roll of plastic and the contents of the bag, because he discovered evidence that was in plain view and was immediately incriminating during his legitimate search. See Horton,496 U.S. 128, 136-137.
 {¶ 33} According to the record, during the officers' second entry, they seized a paper plate from a table in the living room that contained a confession that appellant apparently had written and signed. The record indicates that the note was written on the bottom of a paper plate, and was located on a table, underneath two clean, blank paper plates that had a watch on top of them. It does not appear that anything about this paper plate would have been immediately incriminating until the officers removed the watch and other plates and then turned the plate upside down in order to discover the note. Thus, it appears that the officers enlarged the scope of their search with regard to the note written on this paper plate, and the note was neither in plain view nor immediately incriminating. Evidence that is obtained during a subsequent crime scene search that goes beyond the plain view exception is not admissible. Sage, 31 Ohio St.3d 173, 185. Accordingly, we agree with appellant that the trial court should have suppressed the contents of this note.
 {¶ 34} However, on April 12, 2001, Officers Rosenbalm and Cobaugh obtained a warrant, authorizing them to search appellant's trailer for any type of camera, film, video camera, bed linens, any clothing the victim may have worn when she was killed, and a portion of the victim's tooth that had apparently been broken. The officers were not able to recover any of these items, but while searching for the broken tooth, they discovered another handwritten confession, written on a piece of paper and inside a folded paper plate.
 {¶ 35} Appellant argues that the contents of this note should be suppressed because it was not particularly described in the search warrant. Under the Fourth Amendment, a warrant must particularly describe the place to be searched and what is to be seized, before it may be issued. However, the plain view doctrine applies when "police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating evidence."Horton, 496 U.S. 128, 135, citing Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022.
 {¶ 36} Applying the plain view doctrine, we find that the officers properly seized the second handwritten note. The officers were legally permitted to search appellant's home, because they were in the process of executing a valid search warrant. The record indicates that Officer Cobaugh opened a folded paper plate that he found on a table in the living room, and then opened the folded note inside. He testified that he did this because he was searching for the victim's chipped tooth, and thought that it could be anywhere. When he opened the note, it read:
 {¶ 37} "To whom it may concern. I'm not really sure what happened. I was drinking and taking pills. When I woke up Friday around 4:30, she was dead. I know it had to be me that did this terrible thing. I almost just killed myself right there. My father was due to show up on Saturday. I just told him she was hung over and sleeping in the bedroom. He took me to the store and dropped me back off at the trailer. I told him to pick us up on Thursday so Shawny could make her doctor's appointment. I am so sorry. Please forgive me. I am also very sorry for the way I have treated you, Mom and Dad. This isn't going to be easy for Tiffany, but I know she'll be alright in your loving care. I love you guys, I'm sorry. Your son, Ronald A. Spence, Jr."
 {¶ 38} When an officer has probable cause that an object is associated with criminal activity, the "immediately apparent" requirement is satisfied. State v. Halczyszak (1986), 25 Ohio St.3d 301, 305. After reading this note, it is certainly apparent that Officer Cobaugh had probable cause to believe that this note was associated with the murder. Because the officers' seizure of this note was proper under the plain view doctrine, we find that the contents of this note were properly admissible as evidence.
 {¶ 39} Appellant's final argument is that all indirect evidence that was developed from information obtained during the April 9 search should be inadmissible. Appellant maintains that the search warrants issued for the searches on April 12 and April 24 were improper, because they were derived from the observations the officers made during their second warrantless search on April 9.
 {¶ 40} Evidence seized during the execution of a valid search warrant is inadmissible if the decision to seek the warrant was prompted by what officers observed during an illegal entry. State v. Carter
(1994), 69 Ohio St.3d 57, 67-68, 1994-Ohio-343. However, we have already determined that the officers were legally permitted to enter appellant's home because of the emergency exception to the warrant requirement. Further, the officers' second entry was a continuation of their initial entry. The only impermissible activity during the second entry occurred when the officers seized the first handwritten note. Nothing in the record indicates that the officers sought the subsequent search warrants on the basis of their knowledge of the first handwritten note. Thus, we reject appellant's argument that the evidence seized as a result of these warrants is inadmissible.
 {¶ 41} In light of the overwhelming amount of incriminating evidence supporting appellant's conviction, we find that any error in the trial court's failure to suppress the contents of the first handwritten note is harmless error. Appellant verbally stated to Officer Rosenbalm that he killed his wife, and police found a handwritten confession with appellant's signature. Police officers found the body of appellant's wife in his closet along with her amputated arm and a hacksaw. Also, officers found bloodstains on a comforter and some pillows on appellant's bed.
 {¶ 42} The trial court correctly overruled appellant's motion to suppress with regard to the verbal statements he made to Officer Rosenbalm. Further, the physical evidence seized on April 9, 2001, the photographs and crime scene diagrams, and the evidence that the officers collected during their searches on April 12 and 24 pursuant to warrants were all admissible. For these reasons we overrule appellant's assignment of error.
Judgment affirmed.
VALEN, P.J., concurs.
WALSH, J., concurs in judgment only.